Argued and submitted February 8, 2012, affirmed April 24, petition for review allowed August 15, 2013 (354 Or 61)

In the Matter of the Marriage of

James R. HERALD,
*Petitioner-Appellant,*
*and*

Dixie L. STEADMAN,
aka Dixie Lee Steadman,
*Respondent-Respondent.*

Multnomah County Circuit Court
090666375; A146603

303 P3d 341

James R. Herald argued the cause for appellant *pro se.* On the briefs was Mark Johnson Roberts.

Helen C. Tompkins argued the cause and filed the brief for respondent.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Rasmussen, Judge pro tempore.

HASELTON, C. J.

### HASELTON, C. J.

Husband appeals from a judgment of dissolution of marriage, arguing that the court erred in dividing the parties' retirement benefits, and, specifically, in its treatment of wife's federal Civil Service Retirement System (CSRS) benefits. In particular, husband asserts that the trial court's apportionment methodology (described in detail below) violated 42 USC section 407(a),[1] as construed and applied in *Swan and Swan*, 301 Or 167, 720 P2d 747 (1986). For the reasons amplified below, we conclude that the property division does not violate 42 USC section 407(a), is not precluded by *Swan*, and comports with the statutory mandate that division of marital property be "just and proper in all the circumstances." ORS 107.105(1)(f). Accordingly, we affirm.

The material facts are few and undisputed. The parties were married from 1989 to 2010. At the time of dissolution, wife was 53 years old and husband was 51 years old. Both were employed during the marriage and at the time of dissolution. As noted above, during the marriage, wife participated in the CSRS—and, as a result of that participation, wife did not contribute to, or accumulate, social security benefits. Husband accumulated social security benefits during the marriage. The sole dispute in this case centers on the division of wife's CSRS benefits—and, specifically, the proper role, if any, of 42 USC section 407(a) in that disposition.[2]

Before describing the trial court's resolution of that matter, *see* 256 Or App at 360, and assessing the correctness of its method and result, it is useful—indeed, essential—to summarize the predicate legal principles.

In rendering a judgment of marital dissolution, a trial court may provide "[f]or the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances." ORS 107.105(1)(f). In providing for

---

[1] The text of that statute is set out below. *See* 256 Or App at 357.

[2] Unlike social security benefits, which, as explained below, are *not* subject to inclusion in the division of marital property, CSRS benefits *are not* excluded from marital property.

a division of property, the trial court first determines what portion of the parties' property is "marital property" subject to distribution upon dissolution of the parties' marriage. *See Kunze and Kunze*, 337 Or 122, 133-34, 92 P3d 100 (2004). The court then determines the value of the marital property and, finally, the court determines in what manner the marital property ought to be divided to achieve an equitable division. *Id.* In fashioning an equitable division, a "retirement plan or pension or an interest therein shall be considered as property." ORS 107.105(1)(f)(A). "The trial court's ultimate determination as to what property division is 'just and proper in all the circumstances' is a matter of discretion." *Kunze*, 337 Or at 136. We will not disturb the trial court's determination unless we conclude that the trial court "misapplied the statutory and equitable considerations that ORS 107.105(1)(f) requires." *Id.*

As a matter of federal policy, social security benefits are not subject to equitable distribution. Specifically, 42 USC section 407(a), the Social Security Act "antiassignment" provision, states:

"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."[3]

In *Swan*, the Oregon Supreme Court construed and applied that provision. There, the trial court's determination of the value of the parties' marital property included "$50,000 attributable to the husband's social security benefits and $29,000 attributable to the wife's [social security benefits]." 301 Or at 170. The court, with those amounts included, awarded each party approximately one half of all of the marital property, and, in doing so, awarded each party his or her respective social security benefits. *Id.* at 169.

On cross-appeal, the husband asserted that 42 USC section 407(a) prohibited the trial court from considering the value of the parties' social security benefits in dividing the

---

[3] The CSRS does not contain such an antiassignment provision.

marital property.[4] *Id.* We rejected that contention, reasoning that, while section 407(a)

> "precludes a court from awarding one spouse's Social Security benefits to the other[,] \*\*\* it does not preclude a court in a dissolution proceeding from considering Social Security benefits when dividing the parties' real or personal property 'as may be just and proper in all the circumstances.' ORS 107.105(1)(f) directs that a 'retirement plan or pension or an interest therein shall be considered as property.' Although Social Security benefits can only be awarded to the person to whom they accrue, *the value of those benefits can be considered in the equitable distribution by the court.*"

*Swan and Swan,* 74 Or App 616, 618-20, 704 P2d 136, *clarified on recons,* 75 Or App 764, 709 P2d 245 (1985) (footnote and citation omitted; emphasis added).

On review, the Supreme Court reversed and remanded, holding that "it was error to consider the value of any social security benefits in making a property division under ORS 107.105(1)(f)." *Swan,* 301 Or at 171. In so holding, the court's analysis turned on its construction of section 407(a). Because there was no compelling, much less controlling, federal precedent as to the purpose and proper construction of section 407(a), the court in *Swan* relied, by analogy, on *Hisquierdo v. Hisquierdo,* 439 US 572, 99 S Ct 802, 59 L Ed 2d 1 (1979), in which the United States Supreme Court had construed a similar antiassignment provision contained in the Federal Railroad Retirement Act of 1974, 45 USC section 231m (1974), *superseded in part by* 45 USC section 231m(b)(2) (1983).

In *Hisquierdo,* the husband had accumulated railroad retirement benefits during the course of the marriage, which the wife claimed was community property to which she was entitled a share upon dissolution of the marriage.[5] 439 US at 578. The Supreme Court of California agreed with the wife. The United States Supreme Court reversed,

---

[4] The wife appealed, challenging the trial court's failure to award any spousal support. *Swan,* 301 Or at 169.

[5] Any distinction between the division of community property and the equitable distribution of marital property had no bearing on the Oregon Supreme Court's analysis of *Hisquierdo* in *Swan;* nor does it bear on our analysis here.

explaining that "[l]ike anti-attachment provisions generally, [45 USC section 231m (1974)] ensures that the benefits actually reach the beneficiary." *Id*. at 583. The Court in *Hisquierdo* concluded that treating the husband's railroad retirement benefits as divisible community property would thwart Congress's purpose, because dividing the benefits would "diminish that portion of the benefit Congress has said should go to the retired worker alone." *Id*. at 590. Accordingly, the federal provision preempted division of the husband's railroad retirement benefits pursuant to state law. *Id*.

As an alternative to direct division of the husband's railroad retirement benefits, the wife in *Hisquierdo* contended that the Court could "vindicate her interest and leave the benefit scheme intact" by awarding an offset of "presently available community property to compensate her for her interest in" the husband's railroad retirement benefits—specifically, the wife asked the Court to award her the marital residence. *Id*. at 588. The United States Supreme Court also rejected that proffered alternative because, the Court concluded, "[a]n offsetting award * * * would upset the statutory balance and impair petitioner's economic security just as surely as would a regular deduction from his benefit check." *Id*.

In *Swan*, the Oregon Supreme Court concluded that, "[b]ecause the antiassignment provisions of 45 USC § 231m are legally indistinguishable from the antiassignment provisions of 42 USC § 407(a)," 301 Or at 176, the reasoning in *Hisquierdo* as to the former applied irresistibly to the latter. Proceeding from that premise, the Supreme Court concluded:

> "The effect of including the value of either spouse's social security benefits in the property to be divided is to allow the trial court to divide that value between the spouses. This conflicts with 42 USC §§ 407, 659 and 662(c). We hold that the value of social security benefits of either spouse may not be considered in the division of property."

*Id*.

It was against that precedential backdrop that the trial court here addressed the conundrum of fashioning a

"just and proper" division in circumstances in which (a) husband's social security benefits could not (because of section 407(a) and *Swan*) be included in the division of marital property, but (b) wife's CSRS benefits were subject to inclusion in the division. Husband argued that, under section 407(a), as construed in *Swan*, his social security benefits are not marital property—and, thus, are not subject to equitable distribution—but that he is entitled to half of wife's CSRS benefits. That is, in the vernacular: "What is mine is mine, and what is hers is half mine."

Confronted with that incongruity, the trial court identified and applied a methodology that, it believed, comported with *Swan*'s constraints while avoiding an inequitable result. Specifically, the court did not include husband's social security benefits in marital property or refer to the amount of husband's social security benefits, as a putative "offset" or otherwise, in effecting the property distribution. Indeed, employing a method used by Pennsylvania courts in similar circumstances, the trial court determined that the value of wife's CSRS benefits, for purposes of the property division, should be the value of those benefits reduced by the value of the social security benefit wife would have earned had she paid into social security during the marriage. In *Cornbleth v. Cornbleth*, 580 A2d 369, 372 (Pa Super 1990), *appeal den*, 585 A2d 468 (Pa 1991), the court described that method:

> "To facilitate a process of equating CSRS participants and Social Security participants we believe it will be necessary to compute the present value of a Social Security benefit had the CSRS participant been participating in the Social Security system. This present value should then be deducted from the present value of the CSRS pension at which time a figure for the marital portion of the pension could be derived and included in the marital estate for distribution purposes. This process should result in equating, as near as possible, the two classes of individuals for equitable distribution purposes."

*See also Schneeman v. Schneeman*, 615 A2d 1369, 1375-76 (Pa Super 1992) (applying *Cornbleth*).

The trial court, consequently, entered a dissolution judgment according with that method. That judgment states and directs:

> "Although *Swan* * * * provides that social security benefits cannot be divided in a marital dissolution action, the court finds that the case does not say that the court must never consider it for any circumstances. It is not just, fair or equitable for one spouse to get an extra benefit that the other spouse is not going to be able to share in. It is more fair to determine what social security benefit would have been earned by wife during the marriage had she paid into social security and then reduce wife's CSRS annuity by that amount and then equally divide what is left.
>
> "* * * * *
>
> "With respect to the CSRS annuity benefit payments paid to wife after she reaches the age of 62, husband shall be awarded a portion of wife's monthly CSRS annuity benefit, determined as follows:
>
> "* * * * *
>
> "Deduct from the result * * * the amount of $391.41 per month, representing an amount calculated by the parties to represent a hypothetical social security benefit value."

Husband appeals, arguing that the trial court's method for calculating an equitable distribution of the parties' retirement benefits is erroneous under 42 USC section 407(a) and precluded by *Swan*. Consequently, husband asserts, he is entitled to one half of wife's CSRS benefits. Wife remonstrates that, "[c]ontrary to husband's assertion, the trial court's equitable division of wife's CSRS benefits does not violate federal law nor does it even implicate the Supreme Court's decision in *Swan*" because the trial court's decision "did not concern any award, valuation of, or equalization of social security benefits between the parties."

We readily conclude that the trial court's resolution of the matter does not run afoul of 42 USC section 407(a). As an initial matter, this case is not controlled by *Swan*. The holding in *Swan* is that a court is not to consider "the *value* of any social security benefits" in making a property division. 301 Or at 171 (emphasis added); *see id.* ("[W]e hold that it was error to consider the value of any social

security benefits in making a property division under ORS 107.105(1)(f)."); *id.* at 176 ("We hold that the value of social security benefits of either spouse may not be considered in the division of property."). Here, the trial court did not refer to the value of husband's social security benefits. To be sure, the trial court's approach to dividing the parties' retirement assets was triggered by the *fact* that husband is entitled to social security benefits; however, the trial court did not consider or rely on the *value* of those benefits. That approach is qualitatively, and conclusively, different from that of the trial court in *Swan*, which included the actual value of the parties' social security benefits in the property division.[6]

Nor does the trial court's calculation of wife's hypothetical social security benefits implicate the fundamental "antiassignment" policies of 42 USC section 407(a). Rather, that calculation merely allowed the trial court to place the parties on equal equitable footing with respect to the division of wife's CSRS benefits. Husband will receive the full amount of his social security benefits without invasion, division, or impermissible offset. That is, the trial court did not offset the value of husband's social security benefits by awarding wife commensurate "presently available [marital] property" in the manner that the Court explicitly rejected in *Hisquierdo*. 439 US at 588. Indeed, as noted, the trial court here did not evaluate or consider the *value* of husband's social security benefits in any manner. Although the *fact* of husband's entitlement to social security benefits affected the result here, nothing in *Swan* or, as nearly as we can perceive, the intended operation of section 407(a), precludes the consideration of that fact by itself.[7]

---

[6] It is also dispositively distinguishable from the alternative approach proffered by the wife in *Hisquierdo*, by which an offset in the property division would have been based on the value of the husband's railroad retirement benefits. 439 US at 588.

[7] We note that several other state appellate courts have determined that trial courts may consider the fact of social security entitlement in dividing marital property. *See, e.g., Biondo v. Biondo*, 809 NW2d 397, 403 (Mich App 2011) (holding that a divorce court may consider social security benefits when formulating an equitable division of property); *Skibinski v. Skibinski*, 964 A2d 641, 643 (Me 2009) ("To assure that the parties are treated fairly, courts are required to consider the receipt of the Social Security benefits when dividing the marital property."); *In re Marriage of Morehouse*, 121 P3d 264, 267 (Colo App 2005) ("[W]hile a trial court may not distribute marital property to offset the computed value of Social Security benefits, it may premise an unequal distribution of property *** on the fact that

In sum, the trial court's thoughtful method of dividing the marital property is not precluded by 42 USC section 407(a) and manifestly comports with the statutory direction to achieve a division that is "just and proper in all the circumstances." ORS 107.105(1)(f). Indeed, as the trial court here emphasized, it would be manifestly *unjust* for husband to receive his full social security benefits and to share in wife's full CSRS benefits while wife is prohibited from sharing in husband's social security benefits and is entitled to no social security benefits of her own. *See, e.g.*, *Cornbleth*, 580 A2d at 371-72 (explaining that a division similar to what husband espouses here would result in a "double blow," in that CSRS benefits would "become part of the marital estate and, thus, divided, yet there will be no Social Security benefit waiting to cushion this financial pitfall"). Accordingly, we affirm.

Affirmed.

---

one party is more likely to enjoy a secure retirement."); *In re Marriage of Boyer*, 538 NW2d 293, 296 (Iowa 1995) ("We see a crucial distinction between: (1) adjusting property division so as to indirectly allow invasion of benefits; and (2) making a general adjustment in dividing marital property on the basis that one party, far more than the other, can reasonably expect to enjoy a secure retirement.").